THE STATE OF NEVADA, Appellant, v. DANIEL
VICTOR HANCOCK, RICHARD PAUL BOYER,
CHARLES E. DIXON, and FRANK G. HINE,
Respondents.

No. 28230

February 26, 1998                    955 P.2d 183

Shearing and Maupin, JJ., dissented.

*Frankie Sue Del Papa,* Attorney General, and *Grenville Thomas Pridham,* Deputy Attorney General, Carson City, for Appellant.

*Lee Elizabeth McMahon,* Las Vegas, for Respondent Daniel Victor Hancock.

*Morgan D. Harris,* Public Defender, and *Sharon G. Dickinson,* Deputy Public Defender, Las Vegas, for Respondent Richard Paul Boyer.

*Steven G. McGuire,* State Public Defender, and *Nancy M. Lemcke,* Deputy Public Defender, Carson City, for Respondent Frank G. Hine.

*Andrew S. Myers,* Las Vegas, for Respondent Charles E. Dixon.

## OPINION

By the Court, ROSE, J.:

On March 3, 1994, a criminal complaint was filed charging the respondents with racketeering and securities fraud. An indictment was filed on February 9, 1995. Respondents moved to dismiss the indictment on a number of grounds. The district court granted the motion to dismiss, stating that the indictment was not pled with specificity. The State contends that the indictment was pled with sufficient specificity to put the respondents on notice of the charges pending against them. The State further contends that because the filing of an amended indictment would not have caused the respondents any prejudice, the district court abused its discretion in denying the State's motion to amend. We conclude that the district court did not abuse its discretion and properly dismissed the indictment.

### FACTS

On March 3, 1994, Daniel Victor Hancock (Hancock), Richard Paul Boyer (Boyer), Charles E. Dixon (Dixon), and

Frank G. Hine (Hine), collectively "respondents," were charged, via criminal complaints, with racketeering and securities fraud. The State alleges that the respondents engaged in a racketeering conspiracy and committed securities fraud by "offering to sell and/or selling securities and either directly or indirectly, making untrue statements or omitting to state material facts in connection with the offer or sale." The State maintains that the respondents solicited investments for the "Barracuda Gold Project" to recover fifty tons of gold bars from federal lands near Ely.

The respondents allegedly told Eleanor Desiano (Desiano), Rosita Kanes (Kanes), and Calvin Williams (Williams) that they had discovered $400,000,000 worth of gold and needed funds to retrieve and store it. According to the State, the respondents told potential investors that the gold had been moved to Florida and dumped in international waters to be recovered as tax-exempt sunken treasure. Desiano allegedly invested $130,000 in the gold project and Williams invested $25,000. The State contends that the respondents failed to produce any gold or repay the investors their funds.

Following a preliminary hearing, the magistrate dismissed the charges against Dixon, but Hancock, Boyer, and Hine were bound over to the district court. At this time the magistrate informed the State that although he was binding over three of the respondents, the complaint appeared defective. On September 29, 1994, the State filed a criminal information against the remaining three defendants. On November 10, 1994, the district court dismissed the information against Hancock, Boyer, and Hine on the grounds that it was vague and ambiguous.

The State did not appeal the dismissal of the information but took the case against all four defendants to the grand jury; the grand jury returned a true bill against Hancock, Hine, Boyer, and Dixon, and the State filed an indictment on February 10, 1995. The seventeen-page indictment charged Boyer, Dixon, Hancock, and Hine with the following: Two counts of racketeering, five counts of securities fraud, or in the alternative, attempted theft, and three counts of securities fraud, or in the alternative, theft.

The four respondents subsequently filed petitions for writs of habeas corpus and motions to dismiss the cases against them. They asserted that (1) the indictment was not clear and concise; (2) the State had improperly included two different crimes within single counts of the indictment; and (3) the State had failed to present exculpatory evidence to the grand jury. In response, the State acknowledged that it had erred in pleading alternative offenses in a single count and moved to amend the indictment.

The State's sixteen-page proposed amended indictment deleted the racketeering charges and set forth the alternative counts of

theft and attempted theft in separate counts; the amended indictment listed a total of sixteen counts in addition to forfeiture. The language of the amended indictment was virtually identical to, and we conclude no more specific than, that which was contained in the original. The district court denied the State's motion to amend, but told the State that it could renew its motion following resolution of the respondents' habeas petitions.

On August 11, 1995, the State filed its opposition to the respondents' motions to dismiss and a counter-motion to amend the indictment. On October 25, 1995, following oral argument, the district court dismissed the indictment without prejudice, stating that the document lacked specificity. The State appeals from this order.

## DISCUSSION

*The original indictment failed to put respondents on notice of the charges*

The respondents assert that the district court properly dismissed the indictment because it was confusing and duplicitous. NRS 173.075 provides, in part: "The indictment . . . must be a plain, concise and definite written statement of the essential facts constituting the offense charged." An indictment, standing alone, must contain: (1) each and every element of the crime charged and (2) the facts showing how the defendant allegedly committed each element of the crime charged. United States v. Hooker, 841 F.2d 1225, 1230 (4th Cir. 1988).

As stated by this court:

> Considering the language of Fed. R. Crim. P. 7(c), from which NRS 173.075 is derived, the United States Supreme Court has also held an indictment is deficient unless it "sufficiently apprises the defendant of what he must be prepared to meet." Russell v. United States, 369 U.S. 749, 763 (1962).
>
> . . . .
>
> "Whether at common law or under statute, the accusation must include a characterization of the crime and such description of the particular act alleged to have been committed by the accused as will enable him properly to defend against the accusation, and the description of the offense must be sufficiently full and complete to accord to the accused his constitutional right to due process of law." 4 R. Anderson, Wharton's Criminal Law and Procedure, § 1760, at 553 (1957).

Simpson v. District Court, 88 Nev. 654, 659-660, 503 P.2d 1225, 1229-30 (1972).

The indictment lists 25 "untrue statements" and "omissions" in Count I, and states that the respondents "either directly or indirectly" made "one or more" of these statements or omissions. Other counts state similar indefinite charges, apparently referring to the same list in Count I. The State asserts that "[p]aragraphs 1 through 29 of the indictment set forth a definite statement of the essential facts which constitute the defendants' crimes."[1] We have reviewed the language of the indictment and agree with the respondents' assertion that the indictment lumps Hine, Hancock, Boyer, and Dixon together, making it "very difficult to decipher who is alleged to have done what."

Moreover, each count is defective. Count I alleges a racketeering conspiracy and cites NRS 207.400(1)(h). However, NRS 207.400(1)(h) is simply a catch-all provision which provides that it is unlawful to conspire to violate any of the provisions of NRS 207.400, i.e., (1)(a) through (g). The indictment fails to assert which provisions of NRS 207.400 the respondents conspired to violate.

A close reading of this count indicates that the State may be alleging a violation of 207.400(1)(c), which provides:

> 1. It is unlawful for a person:
>
> . . . .
>
> (c) Who is employed by or associated with any enterprise to conduct or participate, directly or indirectly, in:
>    (1) The affairs of the enterprise through racketeering activity; or
>    (2) Racketeering activity through the affairs of the enterprise.

Specifically, Count I alleges that "[e]ach defendant agreed to conduct and participate in the conduct of the affairs of the enterprise [the Barracuda Gold Project and other listed entities] and each defendant agreed to the commission of at least two . . . racketeering acts." As racketeering acts,[2] the State asserts in Count I that the respondents violated NRS 205.380 (obtaining money under false pretenses) *and/or* NRS 90.570(2) (committing securities fraud by making untrue statements or omitting statements of material fact in connection with the offer to sell a security) by defrauding (or attempting to defraud) Desiano,

---

[1]The State erroneously cites to and quotes from the original criminal complaint which was presented with numbered paragraphs. The indictment contains no numbered paragraphs; however, we reviewed similar language contained in the indictment in lieu of those portions quoted by the State from the complaint.

[2]Pursuant to NRS 207.390, "racketeering activity" means engaging in at least two crimes related to racketeering which are listed at NRS 207.360.

Kanes, and Williams into investing in the gold scheme. We conclude that Count I is not clear, definite and concise as it does not clearly specify which portion of NRS 207.400 the respondents conspired to violate and it does not specify which respondent made which untrue statements or material omissions to which victims.

Count II is more specific than Count I in that it specifically cites NRS 207.400(1)(c); however, it is still unspecific as to which defendants engaged in which type of criminal activities. Furthermore, the age enhancement pursuant to NRS 193.167 was inappropriately tacked on to Counts I and II.[3] NRS 193.167 does not apply to racketeering; moreover, at the time of the alleged criminal activity (1991-92), the age enhancement did not apply to securities fraud offenses.[4] To the extent that Counts III, IV and VIII assert an age enhancement for securities fraud (as opposed to the alternate pleadings of theft or attempted theft), we conclude that the age enhancement is improper.

Counts III through X each allege violations of NRS 205.0832—"Actions which constitute theft." However, NRS 205.0832 contains nine subsections, and the State fails to specify which provision the respondents were alleged to have violated. Arguably, by carefully reading the language of the counts, a specific provision can be identified. NRS 205.0832(3) provides that a person commits theft if he: "Obtains real or personal property . . . of another person by a material misrepresentation with intent to deprive that person of the property . . . ." However, Counts III through X all generally state that the respondents "committed theft, by obtaining $250.00, or more, . . . from . . . Desiano by means of a material misrepresentation." These counts lack specificity with regard to which defendant allegedly made which misrepresentations.

Based on our review of Counts I through X, we conclude that the State's indictment was neither plain, concise, nor definite. In addition, NRS 173.115 provides, in part: "Two or more offenses may be charged in the same indictment . . . *in a separate count for each offense* . . . ." (Emphasis added.) In Jenkins v. District

___

[3]We note that Count II states that Desiano was 65 years of age or older; however, Count I fails to reference this pertinent fact.

[4]NRS 193.167(1) applies to crimes of assault, battery, kidnaping, robbery, sexual assault, embezzlement, obtaining money under false pretenses, and taking money or property from the person of another. NRS 193.167(1)(a)-(g). A 1993 amendment to NRS 193.167 made age enhancement applicable to violations of NRS Chapters 90 and 91 involving securities and commodities. *See* NRS 193.167(2).

Court, 109 Nev. 337, 339-40, 849 P.2d 1055, 1057 (1993), this court held that: "Although a charging document may set forth alternative *means* of committing a crime within a single count, alternative *offenses* must be charged in separate counts."

Based upon our review of the indictment, we conclude that the district court did not err in dismissing the case against the respondents without prejudice. The record shows that the State has been repeatedly told that its charging documents were defective or vague, yet the State made no significant effort to change the language it employed throughout the proceedings of this case, starting with the original criminal complaint.

*The district court did not abuse its discretion in denying the State's motion to amend the indictment to set forth alternatively pleaded crimes in separate counts*

Pursuant to NRS 173.095(1):

> The court may permit an indictment . . . to be amended at any time before verdict or finding *if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.*

(Emphasis added.) The State concedes that in pleading single counts with alternative offenses (securities fraud *or* attempted theft and theft) it failed to conform to Nevada law. *See Jenkins,* 109 Nev. at 339-40, 849 P.2d at 1057; NRS 173.075(2).

Nevertheless, the State asserts that the district court erred in denying its motion to amend the complaint. The district court concluded that because the respondents had already filed petitions for writs of habeas corpus in response to the original indictment, they would be prejudiced if the State was allowed to amend the indictment prior to the issuance of a decision on those petitions. The district court also noted that the amended indictment contained sixteen counts whereas the original contained only ten, and stated that the amended indictment would probably have to be presented to the grand jury.

The State relies on *Jenkins,* for the proposition that a criminal information may be amended so as to place alternately pleaded offenses in separate counts. 109 Nev. at 339, 849 P.2d at 1056. The State further cites jurisprudence in which this court held that a defendant was not prejudiced by an amendment of an indictment correcting minor clerical errors. Brimmage v. State, 93 Nev. 434, 567 P.2d 54 (1977) (holding that amendment to indictment which changed January 2, 1974 to January 2, 1975, the taxicab model "1970" to 1973 and the word "nukes" to miles did not materially alter indictment). *See also* DePasquale v. State,

106 Nev. 843, 803 P.2d 218 (1990) (deleting four words from the original indictment); Armstrong v. State, 92 Nev. 675, 557 P.2d 272 (1976) (adding the name of a witness to indictment).

*Jenkins* is distinguishable in that a criminal information, rather than an indictment by the grand jury, was at issue. NRS 172.255(1) states that "an indictment may be found *only* upon the concurrence of 12 or more jurors." (Emphasis added.) In the instant case, the proposed amendments were more than clerical and would have materially altered the criminal indictment. We conclude that were the State to be granted leave to amend the indictment so as to add previously alternately pleaded offenses as separate counts, the respondents would be denied due process because it cannot be said that the grand jury found probable cause on each and every amended count. *Compare,* United States v. Leichtnam, 948 F.2d 370, 376 (7th Cir. 1991) (recognizing that resubmission to the grand jury is not mandated where an indictment is *narrowed* by an amendment *withdrawing* a count of a multi-count indictment). Given these circumstances, we conclude that the district court did not err in denying the State's motion to amend the indictment.[5]

## CONCLUSION

We conclude that the district court did not err in denying the State's motion to amend the indictment and in dismissing the case against the respondents without prejudice on the ground that the indictment was not properly pleaded.

SPRINGER, C. J., and YOUNG, J., concur.

SHEARING, J., with whom MAUPIN, J., joins, dissenting:

I believe that the district court's decision not to permit the state to amend the information constituted an abuse of discretion. The district court stated that its reason for this decision was that such amendment would prejudice respondents, who had already filed petitions for writs of habeas corpus based on the original indictment. The district court stated that if the state had sought to cure the indictment's deficiencies before the hearing on respondents' petitions for writ, respondents would not have been prejudiced. In fact, a timely amendment would have rendered respondents' petitions moot, and conserved time and judicial resources.

Respondents also complain that the proposed amended indictment contains more counts than the original indictment. In their petitions for writ, however, respondents assigned error to the fact that each count in their indictment contained more than one

---

[5]Because we affirm the district court's dismissal of the indictment we need not address respondents' alternate argument that the State violated their rights by failing to present exculpatory evidence to the grand jury.

charge. The state sought to remedy this problem by ensuring that each count contained only one charge. Consequently, the amended indictment necessarily contained more counts than the original indictment. Respondents maintain that such amendment unfairly prejudiced them. I do not agree that respondents should be able to succeed in asserting these inconsistent positions. No new charges were added to the proposed amended indictment. Rather, some of the original charges were separated into separate counts; other charges were eliminated.

Although the original indictment was defective in form, the allegations it contained were sufficient to place respondents on notice of the charges against them. The proposed amended indictment contained no additional or different offenses and would not have prejudiced the substantial rights of the respondents. NRS 173.095(1). Therefore, the district court should have granted the state's motion to file the amended indictment.