**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| STEPHEN D. COMSTOCK, *Petitioner-Appellant*, | No. 14-15311 |
| v. | D.C. No. 3:10-cv-00147-LRH-WGC |
| STEFANIE HUMPHRIES; NEVADA ATTORNEY GENERAL, *Respondents-Appellees*. | OPINION |

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Argued and Submitted
March 11, 2015—San Francisco, California

Filed May 12, 2015

Before: Marsha S. Berzon, Jay S. Bybee,
and John B. Owens, Circuit Judges.

Opinion by Judge Owens

# SUMMARY[*]

## Habeas Corpus

The panel reversed the district court's judgment denying Stephen Comstock's habeas corpus petition challenging his Nevada conviction for possessing stolen property—a ring commemorating Randy Street's 1991-1992 national college wrestling championship.

The panel held that Comstock is entitled to relief under *Brady v. Maryland* based on the prosecution's failure to disclose that, prior to trial, Street told the prosecutor and the investigating detective that the ring might have been lost outside, not stolen from his apartment, just as Comstock's lawyer had argued to the jury.

The panel held that Street's recollections were favorable to Comstock in that they impeached the credibility of Street's trial testimony as to how he handled his ring, and more importantly, affirmatively cast serious doubt on whether there was a crime in the first place. The panel also held that the recollections were suppressed. The panel concluded that the suppression was prejudicial because had the information been disclosed, there is at least a reasonable probability that the outcome of the trial would have been different. The panel held the state court's contrary conclusion was an unreasonable application of *Brady* and its progeny.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel instructed that on remand the writ of habeas corpus be granted, setting aside Comstock's conviction and sentence, and that Comstock be released from probationary custody unless the State notifies the district court within 30 days that it intends to retry him, and commences retrial within 90 days.

## COUNSEL

Ryan Norwood (argued), Assistant Federal Public Defender; Rene Valladares, Federal Public Defender, Las Vegas, Nevada, for Petitioner-Appellant.

Victor-Hugo Schulze, II (argued), Senior Deputy Attorney General; Catherine Cortez Masto, Attorney General, Office of the Attorney General of Nevada, Las Vegas, Nevada, for Respondents-Appellees.

## OPINION

OWENS, Circuit Judge:

In March 2004, a Nevada jury found Stephen Comstock guilty of possessing stolen property—a ring commemorating Randy Street's 1991–1992 national college wrestling championship. The State's theory at trial was that Comstock or Danny Carter, a known burglar, stole the ring from Street's apartment, and then Comstock pawned it. Comstock's trial counsel argued that the ring was not stolen, but found outside Street's apartment, where Street likely had lost it. The jury rejected that defense.

This seemingly trivial case had tragic results: Comstock received a 10–25 year sentence under Nevada's habitual offender statute[1] even though the "victim" of this crime, Randy Street, had serious doubts about whether his ring was actually stolen. In a pre-sentencing statement, Street wrote that, prior to trial, he told the prosecutor and the investigating detective that he remembered a time he had taken the ring off outside his apartment, placing it either on the ground or on an air conditioner, and did not recall putting it back on, meaning that the ring might have been lost outside, not stolen, just as Comstock's lawyer had argued to the jury. Yet neither the prosecutor nor the detective told Comstock's lawyer this crucial fact.

We recognize the immense challenge a habeas petitioner faces when making claims under *Brady v. Maryland*, 373 U.S. 83 (1963), and that our court routinely rejects such arguments. But this is no routine case. The troubling and unique circumstances here compel us to grant Comstock the relief that he seeks, albeit ten years too late.

## I. FACTS

### A. The Investigation

Detective Reed Thomas of the Reno Police Department routinely reviewed transactions at local pawn shops for

---

[1] Although Comstock is currently on parole, he "was incarcerated . . . at the time the petition was filed, which is all the 'in custody' provision of 28 U.S.C. § 2254 requires." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). In any case, persons on parole are also "in custody" for purposes of § 2254. *Jones v. Cunningham*, 371 U.S. 236, 243 (1963). Comstock's parole status also suffices as a concrete injury under Article III, and so, his petition is not moot. *Spencer*, 523 U.S. at 7.

"unusual property." In August 2003, something caught his eye: a collegiate championship wrestling ring with some engravings—'91–'92, National Champion, Northern Montana College, 150, and Street. Detective Thomas tracked down the ring's owner, Reno resident Randy Street.[2] Street thought the ring was inside its usual place—a seashell in his apartment. Thomas informed him that, in fact, the ring had been sold to a local pawn shop.

The pawn ticket bore the name of Stephen Comstock, whom Thomas was monitoring under a repeat offender program. Surveillance video confirmed that Comstock had pawned the ring. Comstock lived near Street and did maintenance work at Street's apartment complex, which had suffered a series of recent burglaries.

Thomas and his colleagues questioned Comstock at the police station. Comstock initially said that he could not remember if he had in fact pawned Street's ring, or merely had planned to do so. When pressed, however, Comstock admitted that he had pawned the ring, and he claimed that he had done so for his friend Danny Carter, in exchange for a carton of cigarettes. Comstock said that Carter lacked

---

[2] Street was an outstanding wrestler, winning the Montana high school state championship three times. He received a collegiate wrestling scholarship to attend the University of Nebraska and later transferred to Montana State University Northern, where in 1991–1992, he went 23–0 and led his team to the NAIA national championship. Known for his "huge heart," he passed away in 2012 at the age of 42. *See Randy Street, 42*, Mont. Standard (July 9, 2012, 12:00 AM), http://mtstandard.com/news/local/obituaries/randy-street/article_e77b863e-c971-11e1-92d9-0019bb2963f4.html; *MSU-Northern NAIA National Champions*, Mont. St. Univ. N. Athletics, http://www.msun.edu/athletics/wrestle/natlchamps.htm (last visited Mar. 26, 2015).

identification, so he could not pawn the ring himself. Although Comstock initially stated that he suspected the ring was stolen, as Carter was a known burglar, he then backtracked and said that Carter claimed the ring belonged to Carter's father. The initials "D.C." were scratched lightly inside the ring.

## B. The Trial

An indictment charged Comstock with knowingly possessing stolen property in violation of section 205.275 of the Nevada Revised Statutes. The indictment charged that the property was "obtained by means of larceny." At Comstock's trial, in March 2004, the State argued that the ring was "clearly stolen from [Street's] apartment," either by Comstock or the serial burglar Carter, and that Comstock knew or should have known that the ring was stolen when he pawned it.

Street testified for the prosecution about his cherished ring. He said that he had never loaned the ring to anyone, it never fell off accidentally, and he only wore it once or twice each month. Although he had misplaced it inside his apartment, he did not recall ever losing it outside. When Detective Thomas called and asked about the ring, Street did not know it was missing. He thought it was in its usual place—inside a seashell in his living room—and he remembered seeing it there about two weeks before the call. He also testified that Comstock, as the maintenance worker, had been in the apartment previously.

Comstock called Sharon Taylor, his ex-girlfriend and the housekeeper at Street's apartment complex, as a witness. She testified that she found the ring in the flower bed outside the

complex's laundry room, and brought it into her apartment. According to Taylor, Carter visited her apartment while the ring was inside, and she let him take it. Taylor acknowledged that she had dated Comstock and that they broke up several months before she found the ring.

Comstock also called his co-worker Perry Harring to testify. Harring said that Comstock had asked him for a ride so that he could pawn a ring for Carter. Harring accompanied Comstock to the pawn shop, and also drove Comstock to deliver the proceeds to Carter.

Finally, Comstock tried to call Carter to the stand, but Carter's attorney was unavailable, and Carter wished to consult with him before testifying. Thereafter, Comstock decided not to call Carter, and instead, the State called him as its rebuttal witness. He testified briefly, stating that he had never seen the ring.

## C. Closing Arguments

The parties agreed that Comstock had pawned the ring but disagreed as to whether the ring had been stolen. Relying heavily on the fact that Street cherished and safeguarded the ring, the prosecutor argued that Street never would have lost it: "That ring was important to him and he knew exactly where it was. . . . He didn't lose it, it was stolen." After defense counsel argued that perhaps the ring was simply lost outside (as Taylor testified), the prosecutor returned to Street's testimony: "He keeps it in a seashell or he wears it. He would never lose anything with that significant of value. . . . It was clearly stolen from his apartment." The jury returned a verdict of guilty.

## D.  Sentencing

As part of the sentencing process, Street (the alleged victim) submitted a hand-written victim impact statement. Rather than explain how the crime impacted him, he instead expressed grave concern about whether there had been any crime at all.  Street wrote:

> I am not convinced that my ring was stolen. To have a clear conscience in this matter, I have to bring up the possibility that I may have placed my ring on the ground while outside my apartment washing my motorcycle.  The ring is large & []I can remember a time prior to the ring turning up missing that I took it off for fear of scratching the paint or chrome.  I placed it either on the ground or on the air conditioner outside & I don't remember putting it back on.  The defense attorney kept asking if I may have dropped it out of [my] pants pocket while I did laundry.  I volunteered this info to Detective Reed [Thomas] and Prosecutor Erickson but it never came up @ trial.  I never realized my ring was even missing until Detective Reed [Thomas] called & said he found it in [the] pawn shop.  I'd hate to see this gentleman sentenced for possession of stolen property if it was out of my ignorance of misplacing it.  Please take this into consideration.  He's probably served enough time for not asking nearby tenants if they were missing the ring.  I don't believe my apt. was broken into if all they stole was a ring.

Street concluded his statement with a note, marked with a large asterisk for emphasis: "Please make sure that the judge reads this!"

## E. New Trial Motion

Comstock moved for a new trial. He argued that Street's statement constituted newly discovered evidence and that it revealed that the State had failed to disclose favorable evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). In its opposition brief (but without a supporting declaration or other corroborating exhibit), the State asserted that, prior to trial, when Street was "pressed by the State as to whether it was *possible* he lost the ring," he paused and then responded that "*anything* is *possible*," and it was "*possible* he could have taken off the ring while working on his motorcycle, but in all reality, that would not have happened since the ring was so important to him and, further, that it did *not* happen." Without holding an evidentiary hearing to determine what Street actually said, the trial court denied Comstock's new trial motion in a one-sentence order. The Nevada Supreme Court affirmed, concluding that there was no new evidence warranting a new trial and there had been no *Brady* violation. Because the Nevada Supreme Court rejected Comstock's *Brady* claim on the merits, it is exhausted for habeas purposes. *See* 28 U.S.C. § 2254(b)(1)(A); *Chambers v. McDaniel*, 549 F.3d 1191, 1195 (9th Cir. 2008).

The district court denied Comstock's habeas petition but granted a certificate of appealability on Comstock's *Brady* claim. We have jurisdiction to review that claim under 28 U.S.C. § 2253.

## II.  STANDARD OF REVIEW

We review de novo a district court's decision to deny a habeas petition. *Clabourne v. Ryan*, 745 F.3d 362, 370 (9th Cir. 2014). Under the Antiterrorism and Effective Death Penalty Act of 1996, we may grant habeas relief only if the state court adjudication was contrary to, or an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or resulted in a decision that was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). When applying this standard, we review the last reasoned state court decision. *Clabourne*, 745 F.3d at 371.

## III.  DISCUSSION

### A.  Legal Framework

In *Brady v. Maryland*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). There is no dispute that *Brady* constitutes clearly established federal law for purposes of AEDPA. *See, e.g.*, *Amado v. Gonzalez*, 758 F.3d 1119 (9th Cir. 2014); *Aguilar v. Woodford*, 725 F.3d 970 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 1869 (2014). The dispute is whether the Nevada Supreme Court applied a standard contrary to that of *Brady* or unreasonably applied *Brady*. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).

Comstock carries the burden of proof. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). He must show

either that "the state court applie[d] a rule that contradicts the governing law set forth in [*Brady*]," *Williams*, 529 U.S. at 405, or that the state court's application of *Brady* was "'objectively unreasonable,'" *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Objective unreasonableness is a very demanding standard; "even 'clear error' will not suffice." *Id*. (quoting *Lockyer*, 538 U.S. at 75). Comstock must show that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)) (internal quotation mark omitted). In determining whether Comstock has carried his burden, we focus on Supreme Court case law and may look to our own precedent only as persuasive authority in determining whether the state court unreasonably applied Supreme Court law. *Howard v. Clark*, 608 F.3d 563, 568 (9th Cir. 2010).

## B. Application of Legal Framework

A *Brady* violation has three components: (1) the evidence at issue must be favorable to the accused, (2) the evidence must have been suppressed by the State, and (3) the suppression must have been prejudicial. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). The evidence at issue here is the information that Randy Street, the owner of the allegedly stolen ring, claims to have shared with the State before trial. According to Street's pre-sentencing victim impact statement, he told the prosecutor and the detective that he "may have placed [his] ring on the ground while outside [his] apartment washing [his] motorcycle," and that he recalled a specific instance when he took off his ring "for fear of scratching the paint or chrome," "placed it either on the ground or on the air

conditioner outside," and did not "remember putting it back on."**[3]**  We conclude that Street's recollections detailed in his statement were favorable to Comstock and suppressed to his prejudice.

## 1. The Evidence Was Favorable

Evidence is "favorable to the accused" for *Brady* purposes if it is either exculpatory or impeaching.  *Strickler*, 527 U.S. at 281–82.  If information would be "advantageous" to the defendant, *Banks v. Dretke*, 540 U.S. 668, 691 (2004), or "would tend to call the government's case into doubt," *Milke v. Ryan*, 711 F.3d 998, 1012 (9th Cir. 2013), it is favorable.

The Nevada Supreme Court did not make a clear determination as to whether Street's recollections were favorable to Comstock.  The court concluded that the

---

**[3]** The State argues that the portion of Street's statement regarding his specific recollection of placing his ring down outside pertained to a prior incident, and that Street subsequently retrieved the ring and had it in his possession before Comstock allegedly stole it.  The much more natural reading of Street's statement is that he specifically remembered removing the ring and did not recall having it again before it was recovered at the pawn shop.  Otherwise, why would he remark that he did not "remember putting it back on"?  Moreover, even if the jury "*could* have" indulged the State's strained interpretation of Street's statement, *Smith v. Cain*, 132 S. Ct. 627, 630 (2012), that would not alter our conclusion that the evidence was suppressed in violation of *Brady*.  The nondisclosure of a statement the jury could have—here, likely would have—interpreted as a concrete recollection of the specific incident in which the ring could have been lost undermines confidence in the jury's verdict.  *See id*.  Finally, even if we assume the jury would have adopted the State's interpretation, Street's statement would *still* be *Brady* evidence, as we discuss *infra*, because it supported the theory that the ring could have been lost, which would have been materially useful for the defense.

information in the statement was "mere speculation" that did "not contradict [Street's] trial testimony or rise to the level of a recantation" and had only "minimal" impeachment value. In so holding, the court may have intended to suggest that Street's recollections were not favorable. However, whether evidence is favorable is a question of substance, not degree, and evidence that has any affirmative, evidentiary support for the defendant's case or any impeachment value is, by definition, favorable. *See Strickler*, 527 U.S. at 281–82. Although the weight of the evidence bears on whether its suppression was prejudicial, evidence is favorable to a defendant even if its value is only minimal. *See id.*; *Milke*, 711 F.3d at 1012. Accordingly, Street's recollections were favorable to Comstock—they impeached Street's credibility in terms of how he handled his ring, and more importantly, affirmatively cast serious doubt on whether there was a crime in the first place. Any suggestion otherwise in the state court's decision was contrary to *Brady*. 28 U.S.C. § 2254(d)(1); *see also Williams*, 529 U.S. at 405–06; *Runningeagle v. Ryan*, 686 F.3d 758, 785 (9th Cir. 2012) ("In the context of a *Brady* claim, . . . a state court's use of the wrong standard . . . will result in a decision that is 'contrary to' clearly established federal law.").

## 2.  The Evidence Was Suppressed

Evidence is "suppressed" where it is known to the State and not disclosed to the defendant. *Strickler*, 527 U.S. at 282. The State's duty to disclose is affirmative; it applies "even though there has been no request by the accused." *Id.* at 280 (citing *United States v. Agurs*, 427 U.S. 97, 107 (1976)). To satisfy its duty, the State must disclose evidence known to the prosecutor as well as evidence "'known only to police investigators and not to the prosecutor.'" *Id.* at 280–81

(citing *Kyles v. Whitley*, 514 U.S. 419, 438 (1995)).  Thus, the prosecutor has an obligation "to learn of any favorable evidence known to the others acting on the government's behalf in [the] case, including the police." *Id.* at 281 (citing *Kyles*, 514 U.S. at 437).  Once the prosecutor acquires favorable information, even if she "inadvertently" fails to communicate it to the defendant, evidence has been suppressed. *Id.* at 282.

The Nevada Supreme Court did not determine if the information in Street's statement was suppressed because the court failed to make a factual finding regarding what the State knew prior to trial.  The court noted that the State disputed Street's assertion that he had volunteered his recollections to the prosecutor and detective, but the court nevertheless analyzed, albeit briefly, whether the alleged failure to disclose those recollections violated *Brady.*  Thus, the court appears to have assumed that Street's recollections were suppressed.

Had the Nevada Supreme Court made a finding that the State lacked knowledge of Street's recollections, we would be bound to show deference to that finding.  "But the state court made no such finding." *Wiggins v. Smith*, 539 U.S. 510, 530 (2003).  Had the district court below made a finding regarding the State's knowledge, we would review it for clear error. *Weaver v. Thompson*, 197 F.3d 359, 363 (9th Cir. 1999).  But the district court expressly made "no factual finding or holding as to the nondisclosure element."  We therefore review the record de novo. *See Wiggins*, 539 U.S. at 531.

No evidence in the record contradicts Street's assertion that prior to trial, he provided the State with the same

information that appeared in his victim impact statement. The Nevada courts did not hold an evidentiary hearing, and the State did not submit any declarations or other evidence (such as a report, transcript, or recording) to contest Street's assertion. Although the State's brief in opposition to Comstock's new trial motion claimed that Street told the State that he did not lose the ring, arguments in briefs are not evidence, *see Barcamerica Int'l USA Trust v. Tyfield Imps., Inc.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002), and the State agreed at oral argument that we need not consider any unsupported factual contentions in its new trial opposition brief. Moreover, if the State's contentions in its briefs are relevant, they are relevant as admissions. The brief in opposition to Comstock's new trial motion conceded that when pressed by the prosecutor and detective, Street acknowledged the possibility that he might have misplaced his ring. In its brief to the Nevada Supreme Court, the State again effectively conceded that it had withheld Street's recollections, arguing that "it [is] not at all clear that *what Street told the prosecutor* amounts to *Brady* material" and that "even if the prosecutor tacked a little too close to [the] wind and *should have revealed* the 'inconsistent' statement, Comstock could not have been prejudiced by [the State's] *withholding* this information" (emphases added) (citation omitted).

Both in the district court below and on appeal here, the State has not disputed Comstock's contention that information was suppressed. Because the State has not argued that it was unaware of Street's recollections and has instead consistently taken the position that its failure to disclose those recollections was not prejudicial, we conclude that evidence was suppressed.

### 3.  The Suppression Was Prejudicial

The suppression of favorable evidence is prejudicial if that evidence was "material" for *Brady* purposes.  *Strickler*, 527 U.S. at 282.   Evidence is "material" if it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."  *Id.* at 290 (citing *Kyles*, 514 U.S. at 435).  To establish materiality, a defendant need not demonstrate "that disclosure of the suppressed evidence would have resulted ultimately in [his] acquittal."  *Kyles*, 514 U.S. at 434.  Rather, the defendant need only establish "a 'reasonable probability' of a different result."  *Id.* (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)).   A "reasonable probability" exists if "the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'"  *Id.* (quoting *Bagley*, 473 U.S. at 678); *see also United States v. Sedaghaty*, 728 F.3d 885, 900 (9th Cir. 2013) ("In evaluating materiality, we focus on whether the withholding of the evidence undermines our trust in the fairness of the trial and the resulting verdict.").

The Nevada Supreme Court determined that Comstock had failed to show that the information in Street's statement "was either exculpatory or material," or that its disclosure would "have created a reasonable probability of a different verdict."  The court characterized the information as "mere speculation" with only "minimal" impeachment value, because it did "not contradict [Street's] trial testimony or rise to the level of a recantation."  Those characterizations both understated the impeachment value of Street's recollections and ignored their exculpatory value in light of the trial testimony and the prosecutor's closing argument.

At trial, Comstock attempted to elicit testimony to support his defense that the ring had been lost and later found outside Street's apartment. Comstock's cross-examination of Street was demonstrably ineffective. When Comstock's counsel asked if Street had ever dropped the ring outside, Street replied, "Not that I'm aware of." When asked if he could have dropped it unknowingly, he initially conceded that possibility but immediately added that it "would have never fallen off or dropped." When asked if he had ever misplaced the ring, Street answered, "Within my home or establishment, sure." When counsel posited that perhaps Street had left his ring in his pants pocket and it had fallen out by the laundry room in his apartment complex, Street responded, "I've never left it in my pants." When counsel suggested that Street may have made a bet at a bar and given someone else the ring to hold as collateral, Street replied, "No, sir. Means too much." The most counsel was able to establish was that Street could not be certain he had never before lost his ring "outside the apartment."

The disclosure of Street's recollections would have transformed his cross-examination and the trial. Instead of having to ask open-ended questions exploring whether the ring might have been dropped or lost, counsel would have been armed with Street's specific admission that he "may have placed [his] ring on the ground while outside [his] apartment washing [his] motorcycle." Instead of groping blindly at hypothetical laundry mishaps or bar bets gone wrong, counsel could have deployed Street's specific recollection of an occasion when he removed his ring, placed it on the ground or on an air conditioner outside, and did not recall putting it back on. Because the State suppressed Street's recollections of these particular, relevant facts, "the

defense was empty handed" during Street's cross-examination. *Sedaghaty*, 728 F.3d at 900.

We have held that impeachment evidence is material "if it could have been used to impeach a key prosecution witness sufficiently to undermine confidence in the verdict." *Paradis v. Arave*, 240 F.3d 1169, 1179 (9th Cir. 2001); *see also Sedaghaty*, 728 F.3d at 900 ("[W]e zero in on whether the suppressed materials could have provided an effective means of impeachment."). Because Street's recollections would have undermined the State's narrative of safekeeping—the very foundation of the State's case—those recollections should have been disclosed for impeachment purposes.

Exculpatory evidence is material if its introduction at trial "would have resulted in a markedly weaker case for the prosecution and a markedly stronger one for the defense." *Kyles*, 514 U.S. at 441. Without the information in Street's statement, the jury was led to believe that Street would never have simply set his prized ring on the ground or somewhere else outside, and Comstock's defense that the ring was found, not stolen, was therefore implausible. The fact that Street had told the State that he may have placed his ring on the ground, and that he did put it either on the ground or an air conditioner outside at some point, would have made the State's case markedly weaker and Comstock's defense markedly stronger. Street's recollections therefore should have been disclosed for exculpatory purposes, too.

Supreme Court case law also instructs that the "likely damage" from the suppression of *Brady* evidence "is best understood" by reference to the prosecutor's closing arguments. *Id.* at 444. Here, the prosecutor relied on Street's testimony to emphatically dispute Comstock's found-ring

defense. In her closing, the prosecutor argued that the ring could not possibly have been lost because Street kept it in a seashell in his apartment, knew exactly where it was, and testified as to its immense importance. The prosecutor paraphrased Street's testimony as stating that the ring "can't fall off," "he's never lost it before," and "he did not put it in his pants pocket." She suggested that the ring could not have been found outside Street's apartment, because "[h]e keeps it in a seashell or he wears it. He would never lose anything with that significant of value."

The prosecutor's arguments confirm that Street's testimony was the linchpin of the State's case. That case was built on circumstantial evidence and inference. As the State conceded in its brief to the Nevada Supreme Court, there was a "lack of direct evidence," and "the State really had no direct proof establishing exactly how Comstock came into [possession] of the ring." The prosecutor exhorted the jury to infer that the ring had to have been stolen because Street's testimony established that it could not have been lost. Given that the State had no direct evidence of Comstock's guilt, its suppression of Street's expressed doubts and recollections was especially prejudicial. *See Amado*, 758 F.3d at 1140–41 (holding that *Brady* evidence was material where other evidence was weak); *Aguilar*, 725 F.3d at 985 (same).

In short, because the information in Street's impact statement would have substantially diminished, if not defeated, the State's ability to prove beyond a reasonable doubt that the ring was stolen, the State's suppression of that information "'undermines confidence in the outcome of the trial.'" *Kyles*, 514 U.S. at 434 (quoting *Bagley*, 473 U.S. at 678). Had the information been disclosed, there is at least a "reasonable probability" that the result would have been

different. *Id.* The state court's contrary conclusion was an unreasonable application of *Brady* and its progeny.

We also reject the district court's conclusion that Street's recollections were immaterial because Comstock could have been charged, tried, and convicted on the theory that he had misappropriated lost property.[4] It is true that under Nevada law, "theft" includes the misappropriation of lost property "without reasonable efforts to notify the true owner" when circumstances provide "means of inquiry as to the true owner." Nev. Rev. Stat. § 205.0832(1)(d). It is also true that the possession of stolen property offense for which Comstock was convicted encompasses possession of property that was lost and misappropriated. *See* Nev. Rev. Stat. § 205.275(7). However, Comstock was specifically charged with possession of stolen property "obtained by means of *larceny*" (emphasis added).[5] Larceny, unlike misappropriation, requires an intentional stealing, taking, and carrying away. *See* Nev. Rev. Stat. § 205.220(1).

We evaluate the materiality of *Brady* evidence based on the crimes charged, not based on the crimes that might have

---

[4] We note that the Nevada Supreme Court does not appear to have relied on this argument, the State did not make this argument to the district court, and the State does not make this argument on appeal. Under the circumstances, we would be fully justified in holding that the argument was waived. *See Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009). We address it on its merits only because Comstock is entitled to relief even if the State is given every benefit of any doubt.

[5] As Comstock points out, Nevada requires the State's charging document to specifically identify which form of "theft" was allegedly committed. *See State v. Hancock*, 955 P.2d 183, 186 (Nev. 1998) (affirming dismissal of indictment for lack of specificity).

been charged.  *See United States v. Mejia-Mesa*, 153 F.3d 925, 927–28 (9th Cir. 1998); *United States v. Strifler*, 851 F.2d 1197, 1202 (9th Cir. 1988); *cf. McCormick v. United States*, 500 U.S. 257, 270 n.8 (1991) (noting that the Supreme Court "has never held that the right to a jury trial is satisfied when an appellate court retries a case on appeal under different instructions and on a different theory than was ever presented to the jury.  Appellate courts are not permitted to affirm convictions on any theory they please simply because the facts necessary to support the theory were presented to the jury.").  This makes sense.  *Brady* requires prosecutors to disclose evidence that is "material to the defendant's guilt or punishment."  *Smith*, 132 S. Ct. at 630.  Guilt or punishment cannot, of course, be premised on uncharged crimes, and evidence that directly undermines the prosecution's theory of the charged crime is "plainly material" under *Brady*.  *Id.*; *see also Williams v. Ryan*, 623 F.3d 1258, 1265, 1266 (9th Cir. 2010) (holding that evidence was "classic *Brady* material" where it was "inconsistent with the State's theory at trial" and provided the names of witnesses who could have "undercut the prosecution's theory" (internal quotation marks omitted)); *Benn v. Lambert*, 283 F.3d 1040, 1062 (9th Cir. 2002) (holding the State violated *Brady* where it withheld evidence that "would have substantially undermined the state's principal theory").  Just as a habeas petitioner alleging actual innocence need not establish that he was innocent of an uncharged crime, *Bousley v. United States*, 523 U.S. 614, 624 (1998), a petitioner alleging a *Brady* violation need not establish that the suppressed evidence would have exculpated him from an uncharged offense.

Furthermore, even if it were permissible to disregard the language of a charging document on the theory that the defendant was convicted of a variant of the charged crime, we

disagree with the district court's suggestion that Comstock might have been convicted of possessing lost and misappropriated property, rather than property that was actively and intentionally stolen. The district court reasoned that (1) the jury was instructed that "it is necessary to show that the property was the product of theft," and the term "theft" includes the misappropriation of lost property, and (2) the prosecutor, in her rebuttal closing, suggested that even a found ring could be stolen. However, the jury instructions did not define "theft" or suggest in any way that Comstock could be convicted for merely possessing lost and found property, and the prosecutor's rebuttal closing, like the rest of the State's case, emphatically argued that the ring "was clearly stolen from [Street's] apartment." If Comstock had been charged and tried on the theory that he possessed a ring that had been lost and misappropriated, there would have been different arguments, evidence, and jury instructions. A case of "Finders Keepers, Losers Weepers" differs dramatically from the burglary of a dwelling (which was the government's effective theory at trial). We need not speculate as to how Street's recollections might have affected hypothetical proceedings. The statement was material because there is at least a reasonable probability that its disclosure would have altered the result of the proceeding that actually occurred. *See Smith*, 132 S. Ct. at 630; *Banks*, 540 U.S. at 699; *Kyles*, 514 U.S. at 434.

## IV.  CONCLUSION

This is the rare criminal case where the entire prosecution rested on the shoulders of one man—Randy Street. Street had serious doubts whether there was any crime at all, and to his credit, expressed those doubts and wrote that he recounted to the prosecutor and detective a specific incident in which he

recalled taking off the ring and did not recall putting it back on. Rather than share this evidence with the defense, the prosecution suppressed it. And while *Brady* determinations often are difficult, this was not a close call—the *key* witness had reasonable doubts about whether a crime occurred, and the prosecution should have shared the recollections that formed the basis of those doubts with the defense. The state court's contrary determination was an unreasonable application of *Brady*. We therefore reverse the district court's judgment and instruct that the writ of habeas corpus be granted, setting aside Comstock's conviction and sentence. Comstock shall be released from probationary custody unless the State notifies the district court within 30 days that it intends to retry him, and commences retrial within 90 days.

**REVERSED and REMANDED.**