FILED
United States Court of Appeals
Tenth Circuit

March 13, 2019

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

GLECERIA MEJIA HEARD, a/k/a Justine
Michelle Gazemen,

      Petitioner,

v.

WILLIAM P. BARR,[*] United States
Attorney General,

      Respondent.

Nos. 17-9525 & 17-9539
(Petitions for Review)

_____

**ORDER AND JUDGMENT**[**]
_____

Before **LUCERO**, **HOLMES**, and **EID**, Circuit Judges.
_____

Gleceria Mejia Heard petitions the court to reverse the immigration courts'

determination that she is ineligible for cancellation of removal. The Immigration

Judge (IJ) concluded, and the Board of Immigration Appeals (BIA) agreed, that

Heard's 2005 theft conviction qualifies as an aggravated felony under the

Immigration and Nationality Act. We affirm.

_____

[*] Pursuant to Fed. R. App. P. 43(c), we have substituted Jefferson B. Sessions III,
former United States Attorney General, for William P. Barr, current United States
Attorney General.

[**] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.

Heard, an immigrant from the Philippines, was admitted to the United States as a lawful permanent resident in 1994. In 1999, she pleaded guilty to attempted forgery in violation of Nev. Rev. Stat. § 205.090. In 2005, she pleaded guilty to theft in violation of Nev. Rev. Stat. § 205.0832(1)(b). Based on these convictions, the Department of Homeland Security (DHS) initiated removal proceedings against her in 2016. DHS asserted two grounds in support of removability. First, DHS contended that Heard's theft conviction under subsection (1)(b) is an aggravated felony under 8 U.S.C. §§ 1227(a)(2)(A)(iii) and 1101(a)(43)(G). Second, it contended that both Heard's theft and attempted forgery convictions are crimes involving moral turpitude. 8 U.S.C. § 1227(a)(2)(A)(ii).

Heard applied for cancellation of removal. The IJ determined her theft conviction under subsection (1)(b) constituted an aggravated felony and that she was ineligible for cancellation because of it. To reach this conclusion, the IJ determined that Nevada's theft statute is divisible and that, under the modified categorical approach, subsection (1)(b) is not overbroad when compared to the federal generic definition of theft. Specifically, the IJ held that subsection (1)(b) "meets the generic definition of theft, as it describes conduct that involves the 'taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of rights and benefits of ownership, even if the deprivation is less than total or permanent.'" R. at 242 (citation omitted). Heard appealed to the BIA. The BIA dismissed her appeal, agreeing with the IJ's reasoning: "[l]ike the Immigration

2

Judge, we conclude that section 205.0832(1)(b) defines a categorical 'theft offense' under section 101(a)(43)(G) of the Act because it requires that the defendant exercise control over the owner's property without consent and with the intent to deprive the owner of the rights and benefits of ownership." R. at 6. The BIA also denied Heard's motion to reopen and reconsider her eligibility to obtain relief from removal. Heard petitioned for review in this court regarding both BIA orders, and this court consolidated her petitions.

## II.

### A.

We review de novo the BIA's determination that Heard's theft conviction qualifies as an aggravated felony. *See Rodriguez-Heredia v. Holder*, 639 F.3d 1264, 1267 (10th Cir. 2011). Generally, a lawful permanent resident is eligible for cancellation of removal if she establishes that she meets three requirements: (1) she has been "lawfully admitted for permanent residence for not less than 5 years," (2) she "has resided in the United States continuously for 7 years after having been admitted," and (3) she "has not been convicted of any aggravated felony." 8 U.S.C. § 1229b(a); *see also* 8 C.F.R. § 1240.8(d) (stating that the resident bears the burden of establishing eligibility for cancellation of removal). Among other things, an aggravated felony is "a theft offense . . . for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(G).

To determine whether a state conviction qualifies as a "theft offense" under section 1101(a)(43)(G), we apply the categorical approach. *Cf. Mellouli v. Lynch*,

135 S. Ct. 1980, 1984, 1987 (2015) (applying the categorical approach to an analogous provision of the Immigration and Nationality Act).  We compare the state's definition of the offense with the generic federal offense.  *See Descamps v. United States*, 570 U.S. 254, 257 (2013); *Efagene v. Holder*, 642 F.3d 918, 921 (10th Cir. 2011).  We do not consider the facts of the offense when performing this comparison.  *See Efagene*, 642 F.3d at 921.  Rather, we look only to the definition of the crime of conviction.  *See id.*  Additionally, we "presume that the conviction rested upon [nothing] more than the least of th[e] acts criminalized [by the statute], and then determine whether even those acts are encompassed by the generic federal offense."  *De Leon v. Lynch*, 808 F.3d 1224, 1230 (10th Cir. 2015) (alterations in original) (quotations omitted).  If even the least of the acts criminalized by the state statute are covered by the generic federal offense, then the conviction is a categorical match.  *See id.*

Importantly though, if the statute of conviction is divisible, we only consider whether the elements of the conviction are a categorical match to the generic federal version of the offense.  *See Descamps*, 570 U.S. at 257.  In cases involving divisible statutes, we apply the modified categorical approach to determine which elements supported the conviction.  *See id.*  The modified categorical approach permits us to look at "a limited class of documents, such as indictments and jury instructions."  *Id.*  A statute is divisible if its alternatives are elements.  *See Mathis v. United States*, 136 S. Ct. 2243, 2248–49, 2253–54 (2016).  Elements are what "the prosecution must prove to sustain a conviction," but means are just facts.  *Id.* at 2248 (citation

4

omitted). And "facts . . . are mere real-world things—extraneous to the crime's legal requirements." *Id.*

To determine whether statutory alternatives are elements or means, we first consider the statute itself and state court decisions interpreting the statute. *See id.* at 2256. If these sources are inconclusive, we may "peek" at the record to assist in the analysis. *See id.* at 2253–54, 2256–57. For example, "an indictment . . . could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements." *Id.* at 2257. If the "peek" indicates the statutory alternatives are elements, we then apply the modified categorical approach to determine which elements supported the conviction. *See id.* With these principles in mind, we turn to the Nevada statute in question.

B.

If Nevada's omnibus theft statute is indivisible, then it plainly sweeps broader than the federal generic version of theft. But if it is divisible, then we only consider whether subsection (1)(b)—the section of the statute containing the elements of Heard's conviction—is overbroad. We conclude that the Nevada statute is divisible.

The Nevada Supreme Court has held that a prosecutor charging a defendant for commission of a theft crime must specify which subsection of the theft statute the defendant is "alleged to have violated." *State v. Hancock*, 955 P.2d 183, 186–87 (Nev. 1998) (upholding trial court's decision to dismiss indictment when prosecutors failed to specify which subsection of Nev. Rev. Stat. § 205.0832 the defendants were being accused of violating); *see also Walch v. State*, 909 P.2d 1184, 1188 (Nev.

5

1996) (noting that it is unnecessary for the court to "struggle with [the] technical distinctions between embezzlement, larceny, and other similar offenses, as long as the State charged the appropriate subsection or subsections of the statute"). These cases resolve the issue. Under Nevada law "a charging document may set forth alternative *means* of committing a crime within a single count." *Hancock*, 955 P.2d at 187 (emphasis in original). But "alternative *offenses* must be charged in separate counts." *Id.* (same) (citation omitted). That it was insufficient in *Hancock* for the prosecutors to generally allege that the defendants violated Nev. Rev. Stat. § 205.0832 means that Nevada treats the subsections within section 205.0832 as separate offenses. In other words, the subsections are elements and not means. Finally, we note that Heard's information also supports our conclusion because it references, "to the exclusion of [the other subsections]," subsection (1)(b). *Mathis*, 136 S. Ct. at 2257.

C.

Because the statute is divisible, we consider whether the subsection that supported Heard's conviction matches the generic federal offense. *See Descamps*, 570 U.S. at 257. The information charges Heard with violating subsection (1)(b). That subsection states that a person commits theft if she

> [c]onverts, makes an unauthorized transfer of an interest in, or without authorization controls any property of another person, or uses the services or property of another person entrusted to [her] or placed in [her] possession for a limited, authorized period of determined or prescribed duration or for a limited use.

6

Nev. Rev. Stat. § 205.0832(1)(b) (2005). We compare this language to the federal

generic definition of theft: "the taking of property or an exercise of control over

property without consent with the criminal intent to deprive the owner of rights and

benefits of ownership, even if such deprivation is less than total or permanent."

*Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 189 (2007) (quotations omitted).

Heard contends that, even if the Nevada statute is divisible, she still prevails

because subsection (1)(b) is itself overbroad. Her overbreadth argument comes in

two parts. First, she argues that subsection (1)(b) is overbroad because it does not

require a nonconsensual taking. Second, she argues that subsection (1)(b) is

overbroad because it is satisfied by theft of services. We are not persuaded by

Heard's arguments and conclude that subsection (1)(b) is not overbroad.

1.

Heard's first overbreadth argument focuses on the fact that the definition of

the generic offense specifies that the theft is "without consent." This definition

excludes "the taking or acquisition of property with consent that has been

fraudulently obtained." *In re Garcia-Madruga*, 24 I. & N. Dec. 436, 440 (BIA

2008). Specifically, the BIA held that for a crime to be theft "there must be a

'taking' of property (as opposed, e.g., to an acquiring of property)." *Id.* In other

words, "the property must be obtained 'without consent.'" *Id.*[1] As *Garcia-Madruga*

---

[1] We generally defer to the BIA's reasonable interpretations "of the [Immigration and Nationality Act] . . . in an opinion . . . that is binding precedent within the agency." *Afamasaga v. Sessions*, 884 F.3d 1286, 1289 (10th Cir. 2018).

7

pointed out, the Immigration and Nationality Act distinguishes between "theft" and "fraud" offenses. *See* 8 U.S.C. § 1101(a)(43)(G) (proscribing a "theft offense (including receipt of stolen property)"), § 1101(a)(43)(M) (proscribing "an offense that . . . involves fraud or deceit in which the loss to the victim . . . exceeds $10,000"). Notably, for an offense to qualify as fraud under section 1101(a)(43)(M) it must exceed $10,000. *See id.* § 1101(a)(43)(M). But a similar monetary requirement is not found in section 1101(a)(43)(G)'s description of a theft offense. *See id.* § 1101(a)(43)(G). The BIA determined that the difference between fraud and theft is that fraud involves "consent that has been unlawfully [(i.e., fraudulently)] obtained," whereas theft "occurs without consent." *Garcia-Madruga*, 24 I. & N. Dec. at 439.

Here, subsection (1)(b) prohibits a person from the unauthorized "use[] [of] the services or property of another person" when the property or services have been entrusted to the person or "placed in [the person's] possession for a limited, authorized period of determined or prescribed duration or for a limited use." Consequently, it covers crimes like embezzlement that are satisfied when a person converts property after he or she has already obtained possession of it. Heard contends that, because subsection (1)(b) covers embezzlement, it covers crimes that do not require a nonconsensual taking. We are not persuaded by this argument.[2]

---

[2] Whether Heard has properly preserved this issue is a close call, but we conclude that she has satisfied the minimum requirements by raising the question below and arguing it before this court. *See Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) (stating general rule that arguments not raised in opening brief on appeal are

8

Contrary to Heard's position, embezzlement in subsection (1)(b) does require an "unauthorized" (i.e., nonconsensual) taking. The nonconsensual taking just occurs after the offender has already obtained possession of the property. This is apparent from both the language of the statute and how Nevada has defined embezzlement. *See Walch*, 909 P.2d at 1190 (Springer, J., dissenting on other grounds) (noting that embezzlement under subsection (1)(b) is "taking *while* in possession" (emphasis in original)). Thus, subsection (1)(b) does not run afoul of *Garcia-Madruga*'s interpretation of generic theft as not including instances where property was taken with consent obtained by fraud. *See Garcia-Madruga*, 24 I. & N. Dec. at 440; *see also Vassell v. U.S. Att'y Gen.*, 839 F.3d 1352, 1358 n.2 (11th Cir. 2016) (noting that

---

waived); *Action, Inc. v. Donovan*, 789 F.2d 1453, 1456 (10th Cir. 1986) ("To preserve issues for review by the courts, objections to agency proceedings should be made while the agency still has an opportunity for correction."). She argued before the IJ that a theft offense cannot be established by a statute of conviction that is satisfied by fraud and deceit, *see* R. at 195 (citing *Garcia-Madruga* for support); that section 205.0832 is satisfied by fraud and deceit, *see id.*; and that subsection (1)(b) is problematic because it does not require "intent to deprive," *see* R. at 196. Likewise, before the BIA she argued that "[t]heft by fraud or deceit . . . does not constitute a generic theft offense." *See* R. at 24 (citing *Garcia-Madruga* for support).

Additionally, we note that both the IJ and the BIA ruled on this issue. The IJ held that subsection (1)(b) "meets the generic definition of theft, as it describes conduct that involves the 'taking of property or an exercise of control over property *without consent*.'" R. at 242 (emphasis added) (citation omitted). Similarly, the BIA held that subsection (1)(b) "defines a categorical 'theft offense' . . . because it requires that the defendant exercise control over the owner's property *without consent*." R. at 6 (emphasis added).

Finally, Heard successfully raised the argument here. In her opening brief, she argued that "under an entrustment or embezzlement scenario, the 'without consent' element of generic theft is absent." *See* Pet'r Br. at 42.

9

*Garcia-Madruga* did not resolve "whether theft committed through embezzlement is 'without consent'").

Additionally, the two circuit cases Heard cites, *Lopez-Valencia v. Lynch*, 798 F.3d 863 (9th Cir. 2015), and *Mena v. Lynch*, 820 F.3d 114 (4th Cir. 2016), do not save her argument. Heard cites *Lopez* for "reasoning that . . . embezzlement [does not] fall within the generic theft definition." Pet'r Br. at 42. She cites *Mena* for "holding that receipt of stolen or embezzled property is not categorically a theft offense." *Id. Lopez* does not stand for the cited proposition: in *Lopez*, the Ninth Circuit only mentioned embezzlement in passing and did not opine on whether it qualifies as a theft offense. *See* 798 F.3d at 870. In fact, it appears that the Ninth Circuit might hold that embezzlement is indeed a nonconsensual-theft-offense. *See, e.g.*, *Carrillo-Jaime v. Holder*, 572 F.3d 747, 752 (9th Cir. 2009) (recognizing that "embezzlement involve[s] taking another's personal property . . . without the owner's consent" (quotations omitted)), *abrogated on other grounds as recognized in Pena-Rojas v. Sessions*, 724 F. App'x 622, 624 (9th Cir. 2018).

*Mena*, on the other hand, is a better case for Heard, but it is not enough. In *Mena*, the Fourth Circuit considered whether the knowing "purchase, receipt, or possession" of embezzled property—proscribed in 18 U.S.C. § 659—qualifies as a theft offense. *See* 820 F.3d at 118–21. The Fourth Circuit held that it does not. *See id.* In doing so, it commented that embezzlement itself is not a theft offense because the property is initially acquired through a consensual transaction. *See id.* This out-of-circuit decision is not binding upon us. *See Garcia ex rel. Garcia v. Miera*, 817

10

F.2d 650, 658 (10th Cir. 1987) ("[T]he decisions of one circuit court of appeals are not binding upon another circuit.").

Additionally, the Fourth Circuit hinged its analysis on the fact that embezzlement does not require a nonconsensual taking at the time possession is obtained. *Mena*, 820 F.3d at 119–20 ("By definition, embezzlement . . . involves property that came into the initial wrongdoer's hands with the owner's consent." (footnote and emphasis omitted)). It ignored that, in most embezzlement crimes (like the one here), a nonconsensual taking occurs after possession is obtained. *See id.* at 119–20; *United States v. Clark*, 765 F.2d 297, 303 (2d Cir. 1985) ("To embezzle means the wrongful or willfull [sic] taking of money or property of someone else after the money or property has lawfully come within the possession or control of the person taking it." (quotations omitted)); 1A Fed. Jury Prac. & Instr. § 16:01 (6th ed.) ("To 'embezzle' means willfully or deliberately to take or to convert the money or property of another after the money or property lawfully came into the possession of the person who eventually took it."). We see no reason to call a nonconsensual taking consensual solely because it happens after possession is obtained.

As the dissent in *Mena* observed, much like "a victim of traditional larceny, a victim of embezzlement does not 'consent' to the loss of his property." 820 F.3d at 123 (Wilkinson, J., dissenting). The dissent's observation is true here: the victim of embezzlement in subsection (1)(b) does not consent to the unauthorized use or taking of her property. Rather, she is the victim of a nonconsensual taking that occurs after she has placed the property in the taker's control. Because Heard has failed to show

11

that subsection (1)(b) is satisfied by a consensual taking, we reject Heard's first overbreadth argument. *See Mathis*, 136 S. Ct. at 2251 (noting an offense is overbroad "if its elements are broader than those of a listed generic offense"); 8 C.F.R. § 1240.8(d) (establishing resident bears burden of showing eligibility for cancellation of removal).

2.

We also reject Heard's second overbreadth argument, in which she contends that subsection (1)(b) is overbroad because it prohibits the taking of services. Heard posits that theft of services is not covered under the federal generic definition of the offense. The circuits are divided as to whether theft of services qualifies as a theft offense under section 1101(a)(43)(G). The Fifth and Ninth Circuits have held that theft of services does not qualify. *See United States v. Juarez-Gonzalez*, 451 F. App'x 387 (5th Cir. 2011); *Huerta-Guevara v. Ashcroft*, 321 F.3d 883 (9th Cir. 2003). But the First, Second, and Third Circuits have concluded that it does. *See De Lima v. Sessions*, 867 F.3d 260 (1st Cir. 2017); *Abimbola v. Ashcroft*, 378 F.3d 173 (2d Cir. 2004); *Ilchuk v. Att'y Gen. of the United States*, 434 F.3d 618 (3d Cir. 2006). We find the latter group's position more convincing.

Unless Congress has indicated otherwise, we define removable offenses by looking to their "generally accepted contemporary meaning." *Ibarra v. Holder*, 736 F.3d 903, 913 (10th Cir. 2013). We find this generally accepted meaning by examining the Model Penal Code and state criminal codes at the time Congress enacted the statute. *See id.*; *Taylor v. United States*, 495 U.S. 575, 598 (1990)

12

(relying on the Model Penal Code and state statutes to define the term "burglary" in the Career Criminals Amendment Act of 1986). Here, "[a]t the time of the enactment of § 1101(a)(43)(G), the Model Penal Code had for several years provided for criminal liability for theft of services, and over half the states had criminalized theft of services under their respective criminal codes." *De Lima*, 867 F.3d at 266. Consequently, we conclude that the generally accepted contemporary meaning of theft under section 1101(a)(43)(G) included theft of services.

## D.

Finally, we reject Heard's challenge to the BIA's denial of her motion to reopen and reconsider, which we review for an abuse of discretion. *See Maatougui v. Holder*, 738 F.3d 1230, 1239 (10th Cir. 2013). Because we have concluded on de novo review that the BIA did not err when it held that theft is an aggravated felony, we find that it did not abuse its discretion in refusing Heard's request to reconsider its order affirming the IJ.

## III.

For the foregoing reasons, we AFFIRM both the BIA's order dismissing Heard's appeal and the BIA's refusal to reconsider that order.

Entered for the Court

Allison H. Eid
Circuit Judge

13